Call the first case. 213-187 Barbara Leo v. DuPage Schools Counsel, you may proceed. Good morning, Your Honors. May it please the Court, Marilyn Kosin on behalf of the petitioner Barbara Leo. We are here on a case where the petitioner was awarded at arbitration a confirmance by the Commission with modifications that did not go to the actual findings under the award with a reversal by the Honorable Bonnie Wheaton. I would like to start out by saying Ms. Wheaton's opinion did reverse the Commission. It's a very brief decision that she wrote. She did suggest that she used the manifest weight, but it appears that it was more a de novo review based on her review of video surveillance, which is probably the Before I get into the merits, can you tell us why we have jurisdiction? Why? Ms. Bonnie Wheaton did a final decision. It was an appeal taken by the Respondent in this case, and it's a final decision of a Commission award where she reversed. Should it have been remanded? That is a good question, Your Honor. I believe Ms. Wheaton We took the appeal, Your Honor, based on the finality. I suppose she could have remanded it. But weren't the claimant's entitlement to benefits still undetermined at that point? Well, I believe based on I'm wondering why we have jurisdiction. Based on how she did it, she did find that the claimant would be entitled to nothing, which I suppose would The Commission could have been afforded the opportunity to enter an award if they had, if she had remanded it. But she did not. That is true. I mean, I agree to hear what you're saying. So do we exalt form over substance? I mean, you wouldn't want to remand it? Pardon? Wouldn't you want it remanded? Perhaps, Your Honor. But then I would believe on a remand, we might be in this situation where on the remand I would think they have to acknowledge the circuit court's findings, which would then probably prompt another appeal on the Commission's entry of orders in conformance with Judge Wheaton's findings, unless we were able in I don't know. Sometimes we don't have the opportunity to rebrief the matter in front of the Commission. That is their discretion to allow us to do that. And if they didn't and they entered her findings, we would be back here again. I respect what you're saying, Your Honor. Well, you would be back here, so otherwise you're going to go all in on this appeal. That would be true. So you've got an absence of choice there, but that's all right. Pardon? That being said, though, Your Honor, we are confident that the Commission's decision is a very well-founded decision. Again, taking Judge Wheaton's decision, putting it to the side for the moment, what we have here, we have a Commission that did address very, very carefully the two videos that were presented. But if I can back up a little bit, this is a case, before we get to the video, that has stipulated accidents. We're not here arguing whether or not there was an accident in place. No one has suggested that Barbara Leo did not have two accidents, the first one in 04, the second one in 05. What comes into play is very shortly after the second accident, again which is not contested, video surveillance comes into play. That is one piece of fact that the Commission reviews. It's not the only piece of fact that they review, because they also review doctor testimony as well. And when the Commission itself views video and finds it de minimis, I will suggest that the circuit court does not have, cannot take that and give that heightened weight upon any Torrey Piper appeal. It is one piece, and it is found to be de minimis. And there's good reasons. I won't even try to speculate what, put my own spin on that video, because I think that's even inappropriate. We all have a different opinion after watching the video. I suggest that we look at how the Commission viewed that video. So your position is obviously the Commission is entitled to weigh the credence to the inferences in the way of the evidence, not the circuit court? Yes, it is, Your Honor. It is. And that is important, because they will look at all of it. And they are going to look at all the doctors. And I would suggest if a circuit court at any point in time gives on a reviewed heightened weight to any piece of evidence, whatever that evidence might be, that does not go with the manifest weight. I will suggest that if there are questions of law, and Your Honor heard yesterday something about a wage differential, that is the circuit court, I would agree. There are times when the circuit court does more of a de novo review, what is the manifestation date in a more of a statute of limitations, but not in this type of a case. And when that video is viewed, when you hear additional testimony about that video, and not from Ms. Leo. Ms. Leo doesn't say that's not her in the video or anything like that. She acknowledges I was in that video. She testifies at trial. I was in pain and on pain medication. There is testimony that shortly before that she had had three epidurals. Much is made of her appearance in that video. So rather than just having Ms. Leo testify at trial, the neighbor is brought into trial and the neighbor testifies. The neighbor is a 30-year nurse and she explains what she saw about Ms. Leo. So she offers something more than just having a petitioner at trial. And, again, that's what the commission has in front of them. They don't just have that, but they have some explanation about the video itself. Now, much is going to be made, much is made, over all of the doctors, three doctors who viewed the video and Dr. Mather dropping the petitioner after he sees the video. And I think the commission truly respected and looked at it. Each doctor is going to be given its own weight. This Court has said that in Section 12 of treating doctors, no other one should be given a heightened weight. So we have four doctors. The first thing I will suggest, it doesn't matter if you have three out of four, five out of six, nine out of ten. Just adding numbers is not how any commission should be looking at the facts before them. They're going to look at each doctor, each piece of evidence. And that's what this commission does in this case. And this commission points out facts such as Dr. Mather, strangely, when he writes a report in January of 2006 before his July deposition, he knows that there's video evidence out there, surveillance. Apparently it didn't make any difference to him. And he criticizes Dr. Spencer, one of the other Section 12 doctors who does an IME. And he says, I would still perform this surgery, I would go on. He then, at his deposition, looks at the video, drops her immediately, never even gives Barbara Leo an opportunity to explain anything. She won't return a phone call. And this you will find in the record the commission had this. Dr. Mather, there are three pieces of video expert at his deposition. He even doesn't even, apparently he's not concerned about the shopping incident where some bags are placed in the trunk of a car. He doesn't comment about the trimming of some flowers. He only comments about the spreader which Ms. Leo had testified to. She was pushing around even for exercise. Again, the commission properly dismisses Dr. Mather. But more important than just dismissing Dr. Mather, there are two other Section 12. And the commission, again, looks at those and says, we're not going in this shoe. The first one I think is an easier one, Dr. Trotter, who comes in later in the game. Dr. Trotter, with all due respect to him, is not a back doctor. He is an arm doctor. He doesn't do much surgery. And he starts out with a premise that no one will find in this record whatsoever, that Ms. Barbara Leo must have had back pain prior to the September 24 accident. Nowhere, and there are, the record is fairly voluminous, you will not find that. There is none. And he actually says it would be implausible for him not to have, not for her to have this back pain. So he comes in with such a preconceived notion, the commission properly then dismisses his opinions. We have Dr. Spencer, the final Section 12 examiner. And Dr. Spencer, again, acknowledges that if Ms. Leo had had epidurals and been on pain medication, well, then maybe what he's seeing in this video does make some sense. A flatter facade, you don't see extreme grimacing. He even acknowledges himself, well, perhaps I understand now what I'm looking at. And he also clearly, clearly acknowledges that if someone has a preexisting spondylolisthesis and it can be made symptomatic by accidents, then she would have had the pain that she did. In essence, the commission did a very fine job of going through each piece of the evidence before it. It then finds causal connection for Ms. Leo. It then properly addresses the TTD issue. It finds her a permanent total based on not a big issue, but there is one very well-respected rehabilitation person. Ms. Entenberg comes into play, does find that there is no jobs for Ms. Leo, and properly the commission then finds that she is a perm total. There never was any contrary vocational rehab done by the respondent in this case. So essentially when we had this case, with due respect to the circuit court, it did perform a de novo review. And I believe that the commission's decision should stand. It's well thought out. It sets forth everything completely. Thank you, Your Honors. Thank you, Counsel. Counsel, you may respond. Thank you, Your Honors. Good morning. Good morning, Ms. Kozin. Britt Eisele on behalf of the respondent, DuPage School District 88, the FLE. Mr. Eisele, I want to get right to the guts of this. What does this order mean, the circuit court's order? What did she reverse? Everything? Causation too? I think so. So in other words, the circuit court reversed the entire commission's decision, disregarded the arbitrator's decision, and said this woman is not entitled to any benefits whatsoever. That's how you interpret this order? And that was what I understood from her. No, she didn't say a word about it. She didn't say a thing. I've got the transcript, and the only thing she said is, it's against the manifest weight of the evidence, whatever that means, and didn't say on what issues. It was appealed on certain issues, was it not? It was. Or was everything appealed? Well, I mean. Did you appeal causation? Did I appeal it to the circuit court? Yes. All right. And what was your appeal based on, causation? Yes. So this is an outright, total reversal of the commission, even on causation? It's a good question, because she doesn't say it. Well, it's a real good question, because it determines our jurisdiction. Right. If it's an outright reversal on all issues, we have jurisdiction. If it was only a reversal as to calculation of average weekly wage or something on that order, which was part of the appeal, then in that particular case, we don't have jurisdiction. So you've got to tell us, because you drew the order. What does that order mean? Well, Judge, I mean, I asked for. . . First of all, I can't speak for Judge Wheaton. I don't know what she said except for what she said in the transcript. And I personally argued that this was a backstrain case, that she had the accident. We didn't dispute that there was an accident. It was a compensable accident. And you didn't dispute causation as to a backstrain at least. As to a backstrain. So you would acknowledge she was at least entitled to some benefits? Yes. Well, then what does this order mean? This is an outright reversal of the commission's decision, period. No remand? Nothing. Didn't you acknowledge remanding to the commission would have been appropriate for the sprain? I think so, now that you mention it. I have to say I didn't think about this before today. But, yes, it probably would have been proper because, like we both acknowledge, Ms. Kozin and I, there was two compensable accidents. I just, you know, the whole issue of medical causation as to the seven surgeries she had, we had a problem with. That's a different issue. Right. Because the only thing the circuit judge said is contained in one paragraph. I did note on the video that this claimant appears to be a morbidly obese person. I don't believe that any reasonable person looking at these videos and reviewing the doctor's records could reach the conclusion that the commission reached. I think that based on the review of the records and the video, that the decision of the commission is against the manifest weight of the evidence. So I'll reverse the decision of the commission. That's very vague. You're not kidding, it's vague. So if it's an outright reversal, then go ahead with your argument. I mean, I can't figure out what she did. Well, I know my arguments, I know Ms. Kozin's arguments, and I would ask for a remand. I mean, maybe that's not in the best interests of my client, but I, like you, Judge, agree that perhaps you don't have jurisdiction if the only issue was medical causation. Well, you know, you can look at this two ways. You can look at it and say, well, first of all, it's a poorly worded transcript, and it's a very vague order, and the parties acknowledged that the only thing that was really up for grabs was causation on a portion of the injury, and therefore determined that this is not an appealable order, and I guess we enter in and modify the judge's order to say what it's supposed to say. On the alternative, we can say that we read the order at face value. She outright reversed the commission. We reverse her and send it back. I mean, I don't know what we're supposed to do. The alternative would be to send it back to Wheaton and ask for a modified order. It might speed things up to find out exactly what she meant. It may have the opposite result, too. We might be here in five years talking about what happened here, but go ahead. Well, I'll argue as if the whole thing had been reversed, and I'll be brief. I have never in my 16 years of doing this seen a treating doctor reverse his opinion during the deposition. As much as I think I'm a great lawyer deposing doctors, I have never flipped a treating doctor. This one flipped because of the surveillance video. When Ms. Cosen, I heard her in her argument mistakenly refer to him as one of the Section 12 doctors. The arbitrator did the same thing. He thought that Dr. Mather was a Section 12. In fact, she chose Dr. Mather as her treater, and he treated her consistently and regularly prescribing surgery until he saw the video. When he saw the video of what she was doing, hyperflexing and flexing, he said, you know, she has full functionality, there's no reason to do surgery, and he discharged her. He refused to see her. By the way, Ms. Leo was at the deposition personally when this happened. And so he can be painted as an evil doctor, but I think that he was concerned that he was treating something that may not have been treatable. She eventually went on to Dr. Maltesos, who performed seven surgeries. She had spondylolisthesis and spondylosis and stenosis, which all three doctors, the two Section 12s and Dr. Mather, agree can be, and even Dr. Maltesos in a general way, say can be symptomatic even without a trauma. And that's our argument here, that perhaps at most she suffered a back strain, but that she didn't have this aggravation of spondylosis or spondylolisthesis. Still, you have a situation where you have competing doctors' opinions, and the commission went one way and we see those cases all the time and pretty much routinely hold that it's not against the manifest weight. Right. And by the way, I think the standard is manifest weight here. I just feel that the manifest weight, I think that it is almost indisputable that she had a congenital problem that got worse, not because of an accident, but because three doctors. The other thing about the eyewitness testimony, this nurse, Ms. Dickerson, who said that she saw pain on the person's face. You know, Ms. Leo never told her she had pain. She said that 30 years as a nurse, she knows pain when she sees pain in a person's face. Well, you can view the video yourself and see if you see any pain. She did not hesitate in fertilizing her lawn, doing her yard work, bending over, hyperflexing. She did that for over half an hour. And I didn't see any pain. You know, I mean, this isn't something that an expert needs to look at. We don't need a nurse to see her. So it's not just the surveillance. It's the eyewitness testimony. It's the physicians, three or four of them. I guess, I mean, the only evidence that I see is Dr. Maltesos, who performed seven surgeries and who gave her causal connection. I just think that there is a manner. I just think it's against the manifest way to the evidence to say that she was injured because of work. And that's my argument. I will defer those to this court as to the issue of jurisdiction. I would propose that it be sent back to Bonnie Wheaton if there's some accelerated way to do that to find out her opinion. But otherwise, if you find that it's completely reversed in all respects, I don't personally believe it should have been. I think there were compensable accidents. I think there may be medical causation as to a strain, and even as to TTD. We paid a certain amount of TTD that I think is probably reasonable for a back strain, then I would leave it up to the court. Thank you. Thank you very much. Counsel, you may reply. I'd like to address the jurisdiction issue a bit more because I appreciate the court's concern on this. To protect my petitioner, I think I would have been taking a huge risk had I done anything but take the appeal. I think, if I can use a cliche, Judge Wheaton went all in on this, okay? For whatever, I won't speak to why, but she did. Something else you can do is file a motion for clarification or something like that. Judge, you know, you reversed, but there's no remand. Did you mean to remand? What did you mean? And perhaps now in hindsight, in hindsight, in hindsight, I think we've viewed it as just an outright complete reversal. So when you know. Well, how does she view it as an outright and complete reversal when your opponent doesn't view it that way? I mean, the problem we have here is she wrote, you're right, an outright reversal of an entire decision. And even your opponent confesses. I mean, we're not disputing the fact it was an accident. We're not disputing she had a strain. And so the question that I have is, what's the remedy? Well, one remedy that, I mean, it's a harsh remedy in terms for Judge Wheaton, but an outright reversal of Judge Wheaton. And we have a commission decision which is very well thought out. Well, wait a minute. But then we never get to review the question of, you know, what is her decision on the individual issues raised by the parties? Or is the proper decision here just a vacator order and send it back and say, listen, write an order that addresses the issues raised by the parties and tell us specifically how you're ruling on each one of those issues? And I respect that decision. I would respect that decision. And then, at least then, nobody, neither of you, loses your right to appeal. Correct. Ultimately. And we would be back before you and, you know, with all Mr. Isley and I, we would be back before you again. And I respect that. So with that being said, Your Honor, I will leave it to you. Thank you, counsel. Thank you.